P. R. VAN FRANK, Trustee, etc., Plaintiff, Appellant, v.
ST. LOUIS, C. G. & FT. SMITH RAILWAY COM-
PANY et al., Defendants, Appellant; EHRET WAR-
REN MANUFACTURING COMPANY, Intervenor,
Respondent.

**St. Louis Court of Appeals, May 18, 1901.**

1. **Railway Company:** LIEN OF SUPPLY CLAIMANT: STATU-
TORY LIEN: EVIDENCE. In the case at bar, the evidence discloses
that the consideration of the accepted bills of exchange was articles
furnished to construct or improve the buildings used in operating the
St. Louis, C. G. & Ft. Smith Railway, for which a mechanic's lien,
under the provisions of section 4239 et seq., Revised Statutes 1899
might have been enforced, which would have displaced all mortgages
placed on the property after the lien law was adopted in this State,
provided the lienor had complied with the requirements of such liens.

2. ————: ————: ————. And as the record, in the case at bar, af-
firmatively shows that no steps were taken to enforce the lien given
by the statutes, the intervenor is not entitled to any equitable lien.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry
C .Riley,* Judge.

REVERSED AND REMANDED.

STATEMENT OF THE CASE.

This is an appeal from the order of the court affirming
the allowance by a referee of the amount of two bills of ex-
change accepted by the defendant railway company and pay-
able before it became the subject of foreclosure proceedings.

The aggregate amount of the evidences of debt is two hundred and seventy-two dollars.    There was evidence before the referee which tended to show that the consideration for the indebtedness was material furnished by the intervenor, consisting of roofing felt and asphaltum cement, which was used in the construction and repairs of the roofs of the said railroad company's machine shops, which consideration was furnished, and which indebtedness accrued thereon before the foreclosure proceedings were instituted against said railroad; that said railroad earned no surplus income while in the hands of the receiver appointed in such proceedings.    The circuit court ordered the payment of the aforesaid indebtedness out of the proceeds of the sale of the mortgaged property.

*R. E. Rombauer* for appellants.

(1)    Initial orders establishing preferences, as conditions in the appointment of a receiver, where the receiver has not acted upon them, are subject to review on final hearing even though made with the express consent of parties before the court.    Railroad v. Wilson, 138 U. S. 501; Kneeland v. Loan Co., 136 U. S. 89.    (2)    Paragraph six of the initial order is wholly unwarranted in so far as it gives preference to labor and supply claimants over the mortgage liens represented by Doyle, trustee, and the Mercantile Trust Company, and in so far as it makes such claims payable out of the proceeds of sale, regardless of the fact whether there were any net earnings of the railway company, applicable to the claim during the period of preference or during the receivership.    Kneeland v. Loan Co., 136 U. S. 89; Trust Co. v. Brick and Contracting Co., 95 Fed. Rep. 850; Coal Co. v. Railroad, 170 U. S. 365. (3)    Paragraph six of the initial order was, furthermore, wholly unwarranted, because it extends the time limit to one

Van Frank v. Railroad.

year preceding March 3, 1893, and to nearly two years before the valid appointment of a receiver in this case. Wherever the Federal courts have adopted a general time limit, they have made it not exceeding six months prior to the receivership, and in many cases not exceeding ninety days. Fosdick v. Schall, 99 U. S. 235; Blair v. Railroad, 27 Fed. Rep. 471; Bound v. Railroad, 58 Fed. Rep. 473.

*Sam. M. Green* for respondent.

(1) Preferences are universally allowed for labor, supplies, equipment or permanent improvements; and courts of equity make a condition precedent to the appointment of a receiver that the bondholders' trustee shall assent to preference and payment. Fosdick v. Schall, 99 U. S. 235, 252; Trust Co. v. Souther, 107 U. S. 591. (2) CALDWELL, J., in Loan & Trust Co. v. Railroad, 53 Fed. Rep., p. 189, says: "It is an error to suppose that such debts can only be given priority where there has been a diversion of the income of the road; nor is it true that they can only be paid out of the earnings of the road and can not be made a charge on the *corpus* of the property. A diversion of the income is not essential to give them priority, and they may be made a charge on the *corpus* of the estate if the earnings are not sufficient to pay them." ' Miltenburger v. Railroad, 106 U. S. 286, 311, 312; 1 Sup. Ct. Rep. 140; Trust Co. v. Railroad, 117 U. S. 434, 457, 467; 6 Sup. Ct. Rep. 809; Thomas v. Railroad, 36 Fed. Rep. 808.

BOND, J.—While the abstract filed in this court does not set out the evidence adduced on the trial *in totidem verbis*, it discloses that the consideration of the accepted bills of exchange was articles furnished to construct or improve the buildings used in operating the St. Louis, C. G. & Ft. Smith Rail-

way, for which a mechanic's lien might have been enforced, which would have displaced all mortgages placed on the property after the lien law was adopted in this State, provided the lienor had complied with the requirements prescribed for the establishment of such liens. R. S. 1899, sec. 4239, et seq. The record affirmatively shows that no steps were taken to enforce the lien given by these statutes. Although the existence of a statutory lien does not of itself abrogate prior equitable liens which *existed* when the statute was enacted; it does furnish the measure and method of the enforcement of liens in all other cases. The right of supply claimants to an equitable lien, in certain contingencies, upon the mortgaged property of a railroad in the course of administration by the courts, first received the assent of the Federal judiciary in October, 1878. Fosdick v. Schall, 99 U. S. 235. It was never approved by the appellate courts of this State until, and to the extent, shown in the opinions of this court at this term. It is clear, therefore, that the doctrine in question had received no recognition anywhere when the policy of this State, to create a mechanic's lien for a claim like the one under review, was manifested by the statutes above quoted, which were first enacted in the Session Acts of 1873, p. 58, or five years anterior to the first ruling on this subject by the United States courts. Under this state of the law and upon the facts shown in this record, we can not escape the conclusion that intervenor's rights should have been set up in conformity with the statutes of this State applicable to the enforcement of mechanic's liens for like demands against railroads. This was not done.

It follows that the learned trial judge erred in decreeing a lien upon a different theory in favor of the intervenor against the proceeds of the sale of the mortgaged property. The judgment herein is reversed. All concur.