P. R. VAN FRANK, Successor to LEO DOYLE, Trustee, Plaintiff, Appellant also Respondent, v. ST. LOUIS, CAPE GIRARDEAU & FT. SMITH RAILWAY COMPANY et al., Defendants, Appellant also Respondent; SOUTHERN MISSOURI & ARKANSAS RAILROAD COMPANY, Appellant also Respondent; JAMES F. BROOKS, Intervener, Respondent but also Appellant.

### St. Louis Court of Appeals, March 18, 1902.

1. **Railroads: LIEN FOR PERSONS DOING WORK ON RAILROAD: STATUTORY LIEN: EQUITABLE LIEN: CIVIL ENGINEER, RIGHT TO LIEN.** Section 4239, Revised Statutes 1899, provides a lien for *all persons* who shall do any work or labor in constructing or improving the roadbed or other appurtenances of a railway, and the language of the section includes a civil engineer who surveys and stakes out the line and then superintends the building of the road.

2. ———: ———: **STATUTORY REMEDY EXCLUDES EQUITABLE REMEDY.** When a claim is one for which a lien is afforded by section 4239, Revised Statutes 1899, relating to liens in favor of contractors, materialmen, and laborers, against railroads, that statutory remedy excludes the equitable one of allowing a preference in a foreclosure suit.

3. **Equitable Jurisdicton, When it Precludes Statutory Remedy.** While a remedy or jurisdiction of courts of equity is not abolished by legislative creation of a legal remedy available in the same circumstances, unless the act expressly or by necessary implication precludes the further exercise of the equitable jurisdiction, yet where the relief sought was not introduced into the equitable

Van Frank v. Brooks.

jurisdiction of our courts until after the enactment of lien laws affording the same relief, the claimant must pursue the statutory remedy.

4. ———: ———. And in the case at bar, the legal remedy available to the intervener to collect the money the railroad company owed him for wages, was created years before any court had introduced the equitable relief he now invokes. The legal, instead of the equitable, procedure is the older and therefore precludes the exercise of the latter.

5. ———: ———. And in the case at bar, the intervener was not debarred from proceeding to perfect and enforce his lien in the statutory mode, by the order of the court placing the railroad property in a receiver's custody.

6. Lienor: RIGHT TO BE PAID BEFORE INCUMBRANCERS. Courts of equity do not disregard plain statutes giving lienors a right to be paid before incumbrancers when they take charge of incumbranced property at the latter's instance.

7. Equity: PRACTICE, TRIAL: PLEADING. Under the practice act of our State the plea of "remedy at law" is unknown.

8. Practice, Appellate. On motion of a party and to expedite the final settlement of litigation growing out of a receivership, final judgment in a cause may be entered in the appellate court instead of remanding it to the circuit court.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND JUDGMENT HERE.

STATEMENT OF THE CASE.

This case has been remanded to this court by the Supreme Court, to which it was first transferred as lying outside our pecuniary jurisdiction.

The controversy is over one of many intervening demands which were filed in a suit to foreclose certain mortgages on the roadbed, franchises, rolling-stock and other property of the St. Louis, Cape Girardeau & Ft. Smith Railroad Com-

pany, which mortgages were executed by said company and its predecessors the Cape Girardeau Railroad Company and the Cape Girardeau, Southwestern Railroad Company. Several cases of the same kind have been previously decided by this court and reference is made to the reports of those cases for a history of the affairs of the railway companies and of the foreclosure litigation. Van Frank v. Robt. G. Ranney et al., 88 Mo. App. 508; Van Frank v. Mo. Pac. R'y Co. et al., 89 Mo. App. 460; Van Frank v. Curran Printing Co. et al., 89 Mo. App. 489; Van Frank v. Ehret Warren Mfg. Co. et al., 89 Mo. App. 573.

A complete statement of the facts, except such as are peculiar to this intervention, will be found in connection with the opinions in the above decisions.

James F. Brooks, the present intervener, is a civil engineer and was the chief engineer of the St. Louis, Cape Girardeau & Ft. Smith R'y Company during the construction of that railroad and its branches and up to the time the property was put into the hands of a receiver in said foreclosure suit. He commenced to work for the company in the year 1882 and remained in its employ until March 3, 1893, the date when a receiver was first appointed.

The claim which he asks to be allowed as a preferred demand, to enjoy priority over the mortgage debts in the distribution of the proceeds of the sale of the railway property, is made up of various items running from the year 1885 (at which time there was a settlement of the account between him and the company for services theretofore rendered) to 1893 and is largely for his salary during that time. Other items are for money which he paid for the benefit of the company while acting as chief engineer, mostly to obtain necessary supplies or labor; also nine hundred and twenty-five dollars paid out of his personal funds for taxes the company owed and for which a suit or seizure was threatened, and another item of five hundred and twenty dollars earned by surveying the line

of another road, to-wit, the Pemiscot railroad, owned by a distinct corporation, but built under the direction of Louis Houck, president of the St. Louis, Cape Girardeau & Ft. Smith Railroad Company. The basis of the intervener's claim for that item, as we understand the testimony, is that Houck paid the amount of it to the last-named company as compensation for the time Brooks was occupied in surveying for the Pemiscot Railroad Company, and as Brooks was not paid his salary for said time by the St. Louis, Cape Girardeau & Ft. Smith Railroad Company he contends he was entitled to have that sum allowed him as a preferential demand.

Brooks also claims fifty dollars for a lot in the town of Williamsville which he says Houck as president of the company, agreed to give him for securing right of way and depot grounds and did convey to him; but for which the auditor of the company, in ignorance of the agreement made by Houck, charged him fifty dollars on his account with the company. There is a discrepancy in the testimony about this matter, as Houck testified the lot was conveyed to Brooks without charge as agreed. The evidence is inconclusive as to what the actual facts were. This item is charged in the intervener's account under date of February 28, 1893.

The amount owing to the intervener for his services and disbursements is shown in the itemized account filed with his demand to aggregate $14,422.02 and the credits he allows the company to $9,054.30, leaving a balance still due to him of $5,367.72. A considerable portion of this balance is made up of interest computed for different periods of time from 1885 down to 1893, on the installments of salary earned by the intervener or sums paid out by him during the different months. A disclaimer was entered as to this interest at the hearing.

From 1885 to the appointment of the receiver there was no settlement of the account between Brooks and the company,

he being paid sums of money at intervals but never the full amount the company owed him.

This claim, like those of all the other interveners, was referred by the circuit court to J. W. Limbaugh, who after hearing testimony, filed his report on the fifteenth day of August, 1898.

It should be remarked in this connection that the initial order of the court appointing a receiver was conditioned on all the debts due from the railroad company for wages and other operative expenses, and for the preservation and protection of the property and interests of the St. Louis, Cape Girardeau & Ft. Smith Railroad Company, which had accrued within one year prior to May 3, 1893, together with all debts and liabilities which the receiver might incur in operating said road, or which he had incurred in operating the same under an order of the Cape Girardeau Court of Common Pleas (which order appointing the first receiver was adjudged void by the Supreme Court of Missouri in State ex rel. Merriam v. Ross, 122 Mo. 435) should constitute a lien on said railroad and all property appurtenant thereto, superior and paramount to the lien of any mortgage; and the receiver was authorized to pay said debts out of the earnings or other funds applicable thereto; and it was further ordered that in default of such funds, the same should be paid out of the proceeds of the sale of the road.

In his report the referee disallowed the claim for all wages due the intervener or expenses paid or cash advanced by him prior to March 3, 1892, as such sums did not fall within the time-limit fixed by the initial order of the court designating the demands which should be paid in preference to the mortgage debts. The referee also reported that the intervener's salary for November and December, 1892, and January, February and March, 1893, amounting to $516.12 had been previously allowed in another intervention; to-wit, that of G. S. Drew et al., and, hence, ought to be excluded from the

allowance in the present intervention. Concerning the item of nine hundred and seventy-five dollars paid for taxes, charged under date of April 30, 1892, the referee found the intervener had been reimbursed for that outlay by three drafts of said date, each for the sum of three hundred and twenty-five dollars, and, hence, found against the allowance of that item, as he did also the item of five hundred and twenty dollars claimed for surveying the Pemiscot railroad. The referee reported that the intervener had a just claim against the railroad company for the sum of one hundred and eighty-seven dollars and twenty cents, being one hundred and twenty-five dollars salary for the month of October, 1892, and sixty-two dollars and twenty cents expenses disbursed by him during said month, which, with the interest thereon from the date when the intervening petition was filed, ought to be declared and decreed a preferential lien to be paid, if necessary, out of the proceeds realized from the sale of the railroad property.

Exceptions to the report were filed by the railroad company and the mortgagees, and also by the intervener; but they were all overruled by the circuit court and a final judgment entered in accordance with the referee's findings, from which judgment the railroad company, the mortgagees, and also the intervener appealed to this court.

The record in this case is unsatisfactory as to what evidence was before the referee. He states in his report that all the evidence was embodied in five exhibits marked A, B, C, D, and E, which were attached to the report; but it is uncertain what evidence those exhibits contained or what portion of it is in the present record. Some of it was not preserved in the bill of exceptions; for the referee speaks of three checks for three hundred and twenty-five dollars each which were received by Brooks about the time he paid the company's taxes, which the referee treated as reimbursing him for his outlay

Vol 93, app—27.

on account of said taxes.    Those checks are not shown in the bill of exceptions.

In connection with certain oral testimony given at the hearing before the referee, the intervener has printed various reports made by the receiver of the railroad company to the circuit court during the pendency of the receivership, in support of his contention that there were net earnings from the operation of the road while in the receiver's hands, which contention is strenuously disputed by the railroad company and the mortgagees, who insist there was a deficit.

*R. E. Rombauer* for appellants.

(1)    The initial order of the court of February 27, 1894, was erroneous and wholly unwarranted, because it purported to give a preferential lien on the corpus of the property for all debts due for wages and operative expenses incurred for the preservation of the property which have accrued for one year prior to March 3, 1893, regardless of the fact whether the claimants had complied with the requirements of the railroad law of the State.    The intervener's claim is for labor and service rendered in the construction and maintenance of the railroad.    Van Frank v. Railway, Printing Company, Intervener, 89 Mo. App.; Same v. Same, Manufacturing Company, Intervener, 89 Mo. App.; R. S. 1889, secs. 6741, 6742, 6743; R. S. 1889, sec. 2538; Laws 1895, p. 101; R. S. 1889, sec. 4911.    (2)    Such initial orders are subject to review on appeal, and as against parties who were not before the court when made have no binding force whatever.    Besides this, the right to have them reviewed was expressly reserved by the final decree in this case.    Van Frank v. Railway, Manufacturing Co., Intervener, 89 Mo. App.; Same v. Same. Printing Co., Intervener, 89 Mo. App.; Railroad v. Wilson, 138 U. S. 501; Kneeland v. American Loan Co., 136 U. S. 89; Farmers Loan & Trust Co. v. Railroad, 96 Fed. Rep. 636.

(3)   The referee erroneously applied the law to the facts found by him, and the trial court erred in overruling the exceptions to the referee's report and in confirming it and in overruling the plaintiff and defendant trustees' motions for new trial:   (a) Because the relief granted is not warranted by the petition.   (b) Because it is not warranted by the evidence.   (c) Because if all other objections were out of the way the intervener would not be entitled to any preference over mortgages even under the Federal decisions.   Kneeland v. American Loan Co., 136 U. S. 89; V. & A. Coal Co. v. Railroad, 170 U. S. 355; International Trust Co. v. Townshend Brick Co., 95 Fed. Rep. 850.

*John A. Hope* and *R. G. Ranney* for intervener.

(1)   On the question of whether or not intervener's claim is governed by the statutes, we make answer to respondent's contention than is contained in our main brief.   (a) In our first brief we met respondent's argument, based on the statutes, by pointing out that no words of preclusion of the equitable remedy are used in the statute, and, hence, that intervener can proceed in equity notwithstanding the statutes. We think our position in this respect is supported by the able opinion of the court in the intervention of Missouri Pacific Railway Company, in this same litigation, in which opinion the following language was used: "It is insisted that the equitable principle we have been considering, may not be recognized by the State courts, because their lien statutes prescribe or point out a policy as to what classes of debts shall enjoy a preference, and, by implication, exclude all those for which no statutory lien is given, or which are not collectible by the statutory mode.   It would be a wholly unjustifiable deduction, in our opinion, to say that because the statutes afford no lien for traffic balances, none can be allowed by chancery court when the circumstances are appropriate for

doing so. The two matters are totally distinct. One is an enacted law, expressive, as far as it goes, of a public policy or sentiment; the other is the creation of equity tribunals, developed by them, as all their other remedies, reliefs and jurisdictions were, because the law was deficient. The existence of a statute, might be a reason for refusing this redress; but the absence of one, surely can not be, unless we reverse the fundamental maxim according to which equity takes jurisdiction. Many State courts have adopted the rule although there were lien laws on their statute books. We deem it a useful one, which can be and ought to be a part of our jurisprudence." (b) Whatever may be the ruling of the court on the question of whether or not there are concurrent remedies in law and equity, our further answer to respondent's contention is that none of the statutes cited are applicable to a case like intervener's, do not afford him any remedy, and that a claim like intervener's is not provided for by the statutes. Section 2538, Revised Statutes 1889, cited by counsel, is section 1006 of Revised Statutes 1899, and is found in article 1, of the chapter on Private Corporations, which article is entitled "Organization, General Power, Duties and Liabilities, with Incidental Matters of Practice." When this section was first enacted (April 23, 1877, Session Acts 1877, page 348) it was entitled "An Act to Better Secure the Wages of Laborers and Operatives," and began "All railroad companies and other corporations shall make payment, etc." In the Revised Statutes of 1879, 1889 and 1899 the term "railroad companies" is omitted. Section 4911, Revised Statutes 1889, cited by respondent, is section 3167, Revised Statutes 1899, and is found in the chapter on Executions. It does not make particular mention of railroad companies, but contains the general terms "any company, corporation, firm or persons, etc." (2) Sections 1006 and 3167 are in *pari materia,* and should be construed together; and by so construing them it will be seen that they relate only to general creditors; that the only

purpose was to fix the priority among general, unsecured creditors; and that these sections do not regulate at all the relative rights of unsecured creditors, and the holders of specific liens. (3) Intervener was the chief engineer. He was not a laborer under contract within the meaning of the statute. He was not provided for by the statute any more than was the superintendent, the auditor, the general manager, the train dispatcher, claim agent or other official of the road. And yet his services and the expenses incurred were part of the necessary current expenses of operating the road. No railroad has ever been built or operated without the employment of a civil engineer. Every railroad in the country has its civil engineers, and their salaries and expenses are on the payrolls as part of the necessary running expenses. The case of Con. P. Curran Printing Co. (89 Mo. App. 489), cited by counsel, does not apply in this case, because that was a claim for materials furnished; the evidence did not show it to possess the elements essential for preference; and besides in this case the record showed net earnings; but did not in that case.

GOODE, J.—We are satisfied the referee and the judge of the circuit court were more likely to reach correct conclusions in regard to the facts of this controversy than we would be, were we to review the evidence and revise their findings. The abstracts of the record furnished by the parties are not clear as to what evidence was adduced on the trial in the court below, or as to how much of it is now before this court. Many similar intervening demands were heard by the capable and painstaking referee who heard this one, and he must have become familiar with all the facts involved; as must also the learned circuit judge, who found no reason to set aside the referee's conclusions, but approved them all, after carefully weighing the exceptions taken by all the parties to the litigation. We will, therefore, also accept them as accurate de-

ductions from the evidence adduced and will confine our attention to the legal propositions involved.

The intervener thus stated the kind of services for which he presented this demand and asked that it be accorded preference to the mortgage debts: "I did all that is usually required of a chief engineer of a railroad. That is, I laid out the lines for it, superintended construction, secured rights of way and attended to a great many other duties not really in the line of an engineer and not usually required of an engineer." His principal services, it is plain, were rendered in surveying routes and superintending construction—the proper work of an engineer. Whatever duties of a different character he performed were not separated from his engineering work in the account so that their value or the time they consumed can be ascertained. The account simply contains charges of one hundred and twenty-five dollars for wages for each month of the eight years from 1885 to 1893 and various sums paid out by the intervener for expenses incurred and for labor and supplies required in making surveys. In fact, practically all the charges are for engineering work.

The intervener testified that the road could not have been built without the services of an engineer. In our judgment that kind of work is lienable within the meaning of our statutes, which provide that all persons who shall do any work or labor or furnish any material in constructing or improving the road, rolling-stock, station-houses, depots, bridges or culverts of any railroad company shall have a lien on the railroad property for such labor or material, provided the work was done or the material furnished pursuant to a contract with the railroad company, its agents, contractors or subcontractors, lessees, trustees, or a construction company engaged in building the road (R. S. 1899, sec. 4239; R. S. 1889, sec. 6741). That statute is of broader intention and scope than section 1006, Revised Statutes 1899, which was designed to protect such employees of corporations as are called laborers

or workmen in common parlance (William C. Miller v. Henry Boemler, Assignee, 91 Mo. App. 85) or even than section 1057, which is for the benefit of subcontractors, laborers, or other persons working under an original contractor for the construction or improvement of a railroad. It was in construing an act of similar import to section 1006, supra, that the Supreme Court of Pennsylvania ruled a civil engineer was not embraced by its provisions. Penn. & Delaware R. R. Co. v. Leuffer, 84 Penn. St. 168. The same is true of Tod v. Railroad, 3 C. C. A. 60. But our railroad law provides a lien for *all persons* who shall do any work or labor in constructing or improving the roadbed or other appurtenances of a railway, and we think that language includes a civil engineer who surveys and stakes out the line and then superintends the building of the road.

In the intervention cases in the present foreclosure litigation, which were heretofore determined by this court, the question touching the kinds of demands which may legitimately be accorded a preference over railway bonds in a proceeding to foreclose the mortgage security, was carefully considered, as the point had never before been decided by an appellate court of this State. In one of those cases it was adjudged that when the claim is one for which a lien is afforded by the statutes relating to liens in favor of contractors, materialmen and laborers, against railroads, that statutory remedy excludes the equitable one of allowing a preference in a foreclosure suit. Van Frank v. Ehret-Warren Mfg. Co., 89 Mo. App. 573.

Counsel for the intervener do not contest the proposition that their client's demand was lienable so far as the wages owing to him and what he paid for labor and material are concerned, but ask us to reconsider our previous decision that a lienable demand may not be preferred by the order of a chancery court which appoints a receiver of the property at the instance of the bondholders, in a suit to enforce their security,

if the statutory steps to obtain a lien have not been taken by the claimant. The principle of that decision is that a complete legal remedy is given to the claimant by the lien statutes, and as those statutes were in force in this State before the Federal courts first devised and enforced the equitable remedy decreeing certain classes of the floating debts of an insolvent railway company priority to the mortgage debts, this equitable remedy can not be invoked by claimants who might have availed themselves of the statutory lien. We distinctly recognized the familiar doctrine that an ancient remedy or jurisdiction of courts of equity is not abolished by the legislative creation of a legal remedy available in the same circumstances, unless the act expressly or by necessary implication, precludes the further exercise of the equitable jurisdiction; but we treated the relief in question as an innovation in equity procedure, introduced by the Federal judiciary subsequent to the enactment of our lien laws and, hence, not to be enforced in cases where the claimant could have filed a lien but did not. Counsel for the intervener say the Supreme Court of the United States, in Fosdick v. Schall, 99 U. S. 235 (which case first announced the rule in question), did not exercise or declare any new principle of equity, but simply authorized a new application of old and well-settled principles of equity jurisprudence; which is true, but no argument against the soundness of our decision in Van Frank v. Ehret-Warren Manufacturing Company. The question is not, when did the principle on which the preference is allowed originate? but when did courts of equity first assert jurisdiction of such interventions in railway foreclosure suits and assume the right to postpone mortgage liens on railway properties that certain classes of unsecured creditors might be paid? When, in other words, was this peculiar remedy adopted? The underlying principles of equity jurisprudence are none other than those of morality and right conduct; they have existed always and were understood and expounded as early as the times of the

Roman jurisconsults. It is hardly conceivable that a fresh equitable tenet could be enunciated; but remedial devices for enforcing and giving authority, in novel situations or under conditions of recent origin, to principles of acknowledged validity, occasionally need to be invented and used by the courts. But the creation of an equitable remedy for this purpose is not called for when there is already an adequate statutory one in force. Nor could an equitable one be tolerated in that contingency without disregarding the precept that cases are not cognizable in equity when there is a sufficient legal remedy, except in the few instances of concurrent jurisdiction.

The rule we are considering is thus stated by a learned commentator: "Whenever a court of equity, as a part of its inherent powers, had jurisdiction to interfere and grant relief in any particular case or under any condition of facts and circumstances, such jurisdiction is not in general lost or abridged or affected because the courts of law may have *subsequently* acquired a jurisdiction to grant either the same or different relief in the same kind of cases and under the same facts or circumstances." 1 Pomeroy's Eq. Jur. (2 Ed.), sec. 276.

But the legal remedy available to the present intervener to collect the money the railroad company owed him for wages, was created years before any court had introduced the equitable relief he now invokes. The legal, instead of the equitable, procedure is the older and therefore precludes the exercise of the latter.

The novelty of the peculiar relief afforded in chancery to creditors at large of insolvent railroad companies, is shown by the circumstance that it has been so far confined, we believe, to railway foreclosure suits, and is enforced against those companies and their mortgagees on a ground specially applicable to railway companies, namely: that they are quasi-public corporations charged with the duty to the public to keep their 'roads in operation, which can only be done, as bond-

holders and every one else are presumed to know, by purchasing labor and supplies.    Farmers Loan & Trust Co. v. Grape Creek Coal Co., 13 C. A. A. 87; Miltenberger v. Railroad, 106 U. S. 286.    In the absence of lien statutes similar to ours, the courts of other States or the Federal courts, may find it necessary to prefer claims like the one in hand, but we are convinced such a holding in this State would violate the ancient and settled rule against chancery courts taking jurisdiction of causes adequately remediable at law.    Hence, we shall adhere to our former decision of the question.

Nor was the intervener debarred from proceeding to perfect and enforce a lien in the statutory mode by the order of the court placing the railroad property in a receiver's custody. Richardson v. Hickman, 32 Ark. 406; Snow v. Winslow, 54 Iowa 200; Smith on Receivers, sec. 276 (d).    Courts of equity do not disregard plain statutes giving lienors a right to be paid before incumbrancers when they take charge of incumbered property at the latter's instance.    They follow the law and uphold all its provisions as to priority.

As the main case in which this intervention was filed was a purely equitable proceeding and as the relief asked by the intervener was equitable, we think the adversary parties were not bound to plead the legal remedy in answer to his petition, to avail themselves of that doctrine.    The question whether such a plea is required at all seems to have been set at rest by the Supreme Court in Humphreys v. Atlantic Milling Co., 98 Mo. 542, in which it was said:    "Our conclusion is that under our practice act the plea of 'remedy at law' is unknown.    It has no place under our system of pleading." Be that as it may, the present intervener failed to make out a case entitling him to payment in preference to the bondholders.    He neglected to take the necessary steps to make good his lien, and a chancellor is not justified in relieving him from the consequence of his neglect.

A comment on the character of the claim may be appro-

priate.    It is an account extending over eight years for wages,
expenses and advancements of money and, as originally as-
serted, included interest computed at six per cent on each
month's installment of items to the time of filing, showing a
total balance due the claimant of over five thousand dollars.
Some items do not relate to his work at all, but are for his
and another witness's expense in attending court.    That the
intervener was ordered or authorized to make the purchases
or engage the labor for which he charged, was not shown ex-
cept by the testimony of the president of the company, who
said he was satisfied with the reports Brooks rendered as
engineer from time to time and saw nothing objectionable in
the itemized account filed with the intervening petition, ex-
cept a few items.    Such an account of a railway employee,
extending over years and including money paid out indis-
criminately apparently on his own motion, is not a demand
which ought to displace a prior lien on the property, created
by a solemn contract, to secure creditors who advanced money
to build the railroad on the faith of its securities.    That these
preferences are to be confined to debts possessing qualities
which render them meritorious in justice and good conscience
against earlier lienholders, was decided by the court where
the rule originated; and undue extensions of the rule by subor-
dinate tribunals were vigorously denounced as incompatible
with contract rights.    Kneeland v. American Loan & Trust
Co., 136 U. S. 89.    In fact, this doctrine whatever its actual
effect may be, was not looked on when it sprang into being
as infringing the sanctity of contracts or impairing their ob-
ligation; but as being entirely consistent with the general
principles of the law of contracts, as in truth it is if judic-
iously applied.    When bondholders buy railroad securities,
they know very well that certain classes of debts must be
incurred on the faith of the road's earnings to operate it,
and assent, in effect, to such debts being first paid out of the
earnings.    Fosdick v. Schall supra.    In those cases where the

corpus of the property was encroached on despite the fact that no diversion of the earnings had occurred, the same principle was either logically or fallaciously followed on the theory that the debts preferred were necessarily incurred in preserving or improving the property for the benefit of both the mortgagees and the stockholders. Union Trust Co. v. Morrison, 125 U. S. 591; Jones v. Central Trust Co., 19 U. S. Cir. Court of App. 569.

While decisions can be found in the books extending this remedy to claims accruing more than a year prior to the appointment of a receiver, and other cases holding that the limit of time fixed by the order of appointment will not always bar older claims, the present account has no features which dispose us to disregard the limit fixed by the original order.

Only the claim for wages for the month of October, 1892, and the expenses of the intervener during that month were found by the referee and adjudged by the circuit court to be properly owing to the intervener and also to fall within the prescribed time. His claim for wages should be disallowed because there was a good legal remedy for its collection. For his expenses during that month we will permit the decree to stand.

The judgment is, therefore reversed and the cause remanded with the direction to the circuit court to modify its decree awarding the intervener a preference for one hundred and twenty-five dollars for salary during said month of October, 1892. *Bland, P. J.,* and *Barclay, J.,* concur.

MODIFIED OPINION.

GOODE, J.—On motion of the defendants in this case, and to expedite the final settlement of the litigation growing out of the receivership referred to in the opinion, final judgment in this cause will be entered here instead of remanding it to the circuit court. Wherefore it is considered, adjudged

and decreed that the intervener, James F. Brooks, have and recover from the St. Louis, Cape Girardeau & Ft. Smith Railway Company, the sum of sixty-two dollars and twenty cents, with interest thereon at the rate of six per cent per annum from the sixth day of January, 1899, and that said sum be declared a preferential lien on the money realized by the sale of the railroad property, and it is further considered and adjudged that Jas. F. Brooks pay the costs of this appeal. All concur.