STATE TRUST CO. v. KANSAS CITY, P. & G. R. CO. et al. (WESTINGHOUSE AIR BRAKE CO., Intervener).

(Circuit Court, W. D. Missouri, W. D.   March 29, 1904.)

No. 2,331.

1. RAILROADS—MORTGAGE FORECLOSURE—CLAIMS ENTITLED TO PREFERENCE.

Where a federal court, in a suit to foreclose a railroad mortgage, in consideration of the previous condition of the mortgagor company exceeded the usual limit of six months, and directed the receivers to pay debts for services rendered or materials and supplies furnished and necessary to the maintenance of the road contracted within a year prior to the receivership, it will not extend such period still further, and give preference over the mortgage to a claim arising more than a year before the suit, unless the equities of the case absolutely demand it; and the fact that the claim is one for equipping cars of the mortgagor with air brakes, required by act of Congress, does not give it any higher equity or right to preference than any other claim for necessary equipment or supplies.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF STATE STATUTES.

A decision of the Court of Appeals of Missouri as to the construction or effect of a state statute is not binding on a federal court, since the Supreme Court of the state, which is the court of highest jurisdiction, is not concluded thereby, but may, should the same question be presented to it, determine it differently.

3. RAILROADS—SUIT TO FORECLOSE MORTGAGE—WAIVER OF RIGHT TO ASSERT PREFERENTIAL LIEN.

A creditor of a railroad company, who, after the appointment of receivers for the property of the company in a suit to foreclose a mortgage thereon, filed a statement under a state statute for a mechanic's lien for the debt, thereby waived the right to afterward assert an equitable preferential lien in the foreclosure suit, the right to which was dependent on a different state of facts as to the extension of the credit.

¶ 1. Foreclosure of mortgages in federal courts, see note to Seattle L. S. & E. Ry. Co. v. Union Trust Co., 24 C. C. A. 523.

¶ 2. State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

See Courts, vol. 13, Cent. Dig. § 957.

In Equity.   In the matter of the intervention of the Westinghouse Air Brake Company.

For former opinion, see 128 Fed. 129.

Prior to and on the 1st day of April, 1893, there existed the Kansas City, Pittsburg & Gulf Railroad Company, a Missouri corporation, the Texarkana & Ft. Smith Railway Company, an Arkansas corporation, and the Kansas City, Shreveport & Gulf Railway Company, a corporation of the states of Louisiana and Texas, respectively. The stock of said Texarkana & Ft. Smith Railway Company and the Kansas City, Shreveport & Gulf Railway Company having been largely acquired by the stockholders of the Kansas City, Pittsburg & Gulf Railroad Company with the view of building and operating a continuous line of road from Fairview, in Jackson county, Mo., to the Gulf of Mexico, bonds were issued, of date April 1, 1893, in specific numbers, by the respective corporations, to the State Trust Company of New York, as trustee, for the purpose of raising the necessary funds for the construction and equipment of said continuous line of road; and on the 1st day of April, 1893, a blanket mortgage was placed on said railroad properties in respective amounts aggregating about $23,000,000 in favor of said trust company as trustee. Default having been made in the payment of interest coupons on said bonds, the said State Trust Company on the 6th day of April, 1899, filed its bill in this court against said railroad companies to foreclose said mortgage on the property situate within this jurisdiction. Under this bill Samuel W. Fordyce and Webster Withers, on the 28th day of April, 1899, were appointed receivers of said railroad property of the Kansas City, Pittsburg & Gulf Railroad in this state. Like bills of foreclosure were filed in the United States Circuit Courts in the other states in which the respective corporations were situated, and the said Fordyce and Withers were appointed in these ancillary proceedings as receivers therein. Such proceedings were had under said bills resulting in the foreclosure and sale of said respective properties, under which the Kansas City Southern Railway Company, a Missouri corporation, organized pursuant to the scheme of reorganization, became the purchaser of said properties at the upset price, amounting to $12,500,000, and received a deed therefor. On the 5th day of May, 1899, the Westinghouse Air Brake Company, a corporation of the state of Pennsylvania, filed in the circuit court of Jackson county, Mo., a mechanic's lien on the property of the Kansas City, Pittsburg & Gulf Railroad Company, under the statute of the state of Missouri, to secure an indebtedness on account for air brakes and materials furnished to said last-named railroad company between the 20th day of February, 1897, and the 1st day of April, 1899. On the 15th day of June, 1899, the said Westinghouse Air Brake Company, on its application therefor, was granted leave by this court "to intervene in this cause and file herein its petition for intervention," which was filed on the same date; and on the 8th day of September, 1900, said Westinghouse Air Brake Company filed its amended intervening petition herein, in which it set up a claim on said account against said Kansas City, Pittsburg & Gulf Railroad Company for an equitable lien, preferential in its character to the rights of the mortgagee in said foreclosure proceeding, in which it was alleged that the said material so furnished by said vendor was necessary for the proper equipment and operation of said railroad to keep it a going concern, and that it was understood between said vendor and vendee that the same was to be paid for out of the current earnings in the operation of said railroad not otherwise applied to the expenses of running, operating, and maintaining the railroad; that sufficient funds were earned out of the current income of the railroad to have paid the said indebtedness, but that the same were diverted to the betterment of the railroad property, so as to entitle the intervener to the equitable preferential lien aforesaid; and asking that the same may be declared a lien upon the corpus of the property purchased by said Kansas City Southern Railway Company, and that said lien be enforced, unless otherwise paid by said purchasing company. The bill also, in one paragraph thereof, pleaded the filing of a mechanic's lien aforesaid, and asked for its enforcement against the property so purchased by the Kansas City Southern Railway Company. The issues

on this intervention were referred to E. H. Stiles, master in chancery, to take the proofs and report the evidence, together with his findings on the facts and the law, to this court. The master made his report, finding in favor of the intervener on its mechanic's lien in the sum of $11,271.05; and, further, that, independently of the statutory lien, intervener is entitled to an equitable lien in the sum of $12,316.21. Both parties took exceptions to the findings of the master. On hearing before the court the court held that the bill of intervention was multifarious in asserting in the same bill the equitable lien and the statutory mechanic's lien (128 Fed. 129), and therefore directed that the intervener make its election as to which of said asserted liens it would stand upon for final decree, and to dismiss the bill as to the other claim. Conformably to this direction, the intervener has filed its election in writing herein to stand upon the equitable lien.

Haff & Michaels, for Westinghouse Air Brake Co.

Lathrop, Morrow, Fox & Moore, for Kansas City Southern Ry. Co.

PHILLIPS, District Judge (after stating the facts). The intervener having elected to stand for final decree upon its claim for an equitable lien, the court will not consider or pass upon what it conceives to be some of the vital objections to the validity of the statutory mechanic's lien, but will only discuss and determine the validity of the equitable lien. Paragraph 6 of the decree of this court appointing the receivers provides as follows:

"Said receivers shall be authorized to pay out of any income or revenues which may come to their hands all debts which may have been lawfully contracted by the Kansas City, Pittsburg & Gulf Railway since May 1, 1898, for services rendered to said company by its employés in the operation of its road, including herein the reasonable salaries to its officers, and reasonable compensation for professional services rendered by attorneys; also all debts lawfully contracted during the aforesaid period for materials and supplies furnished to said railway company, and used in the maintenance and operation of its road; and also all traffic balances, if there shall be any due, to connecting carriers. Other claims and demands against said company shall only be paid by the receivers upon orders of court hereafter made, and the court reserves to itself the power to direct the payment of such other demands against said railway as it may deem to be of a preferential nature."

Paragraph 19 of the decree of foreclosure contains the following provision:

"Any such purchaser or purchasers, and his or their successors and assigns, shall enter his or their appearance in this court, and he or they, or any of the parties to this suit, shall have the right to contest any claim, demand, or allowance undetermined at the time of the sale, or which thereafter may arise or be presented, and which would be payable out of the proceeds of the sale hereunder, or by said purchaser or purchasers, his or their successors or assigns, or with which he or they or the property purchased would be chargeable under the terms of this decree; and he or they may appeal from any decision relating to any such claim, demand, or allowance."

It is quite evident from said paragraph 6 that the court did not intend to give priority over the mortgage lien to any and all claims of an asserted equitable character which might be presented against the mortgagor, regardless of the circumstances and the time of their origin. The receivers were authorized to pay out of the income or revenue certain designated debts contracted after May 1, 1898, reserving to the court, by the last clause, the right to determine what other claims and demands against the company should be paid by the receivers. By said paragraph 19, while the purchaser of the road was required to en-

ter its appearance in this court and become a party to the suit, the right was nevertheless reserved to such purchaser "to contest any claim, demand, or allowance undetermined at the time of the sale, or which may thereafter arise or be presented." The first part of paragraph 6 indicates, in a general way, what was the mind of the court respecting the limit of time within which claims should have accrued to authorize their payment. The court was familiar with the history of this railroad, and the character of its burdens, as well as the probable losses that must be sustained by the bondholders whose money had gone into the construction and equipment of the road. The period of 6 months is ordinarily recognized by the federal courts as just and reasonable within which the claim must have accrued to entitle it to preference over the mortgage; and, while it is not an inflexible rule, and the court may reserve to itself the right to allow a longer time when the equities of the case absolutely demand it, there certainly ought to be some special equity to give this particular alleged lienor an extension beyond the 12-months period recognized in paragraph 6. Speaking for myself, who joined with Judge Thayer in making the decree in question, the 12-months period was deemed most liberal to the creditors. And as this court knows that all the claims imposed upon the purchaser of this road have been adjusted upon the 12-months limitation period, it can see no special equity in favor of this intervener, who represents the last unadjusted claim, for according to it, as the master has, a period of 18 months anterior to the appointment of the receivers, even if the claim should be found entitled to the preference asserted.

The principal reason assigned for giving this claim such special distinction is that the air brakes were essential to enable the railroad company to comply with the act of Congress requiring railroads engaged in interstate commerce to equip their trains with the Westinghouse air brake. Aside from the fact that the account in question shows many items which were not air brakes, but were for articles for repairs in and about the cars, and the master has largely cut down the amount claimed, I am unable to perceive why this company, which had the good fortune to get this act through Congress, and secure to itself a monopoly of this entire business, and a special contract from the company obligating it to obtain its supplies from the Westinghouse Company, should stand upon a better footing than the creditor who furnished engines for hauling its trains, or for fuel for propelling the engines, or who furnished ties and rails for the construction of the road. Without these the railroad could not have been operated at all. Railroads had hitherto been operated without the intervener's air brakes, but no railroad was ever operated without an engine, fuel, ties, and rails. Congress itself extended the time to 1900 for railroads to comply with the act without being amenable to the penalties therein provided. In view of the manner in which all other claims have been adjusted under the receivership and the decree of the court, I am unwilling to make any discrimination in favor of this intervener by recognizing its preferential right, if at all, anterior to the 1st day of May, 1898. Nor can this court see any special reason for the claim of the intervener for interest on its claim. No other claim-

ant has been allowed interest on its claim, and the general rule is not to allow such interest. Thomas v. Western Car Company, 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663. And so the master has found.

A more serious question confronts the claim of the intervener. As shown by the foregoing statement of facts, and as disclosed on the face of the bill, the intervener, shortly after the appointment of the receivers, filed its claim for the account in question with the clerk of the circuit court of Jackson county, Mo., asserting its right to a statutory mechanic's lien. Counsel for the Kansas City Southern Railway Company, the purchaser under the foreclosure sale, interposes the objection that the state statute giving a mechanic's lien, and the action taken thereunder by the intervener, preclude the assertion of any equitable lien. This contention is predicated in part upon the ruling of the Court of Appeals of this state in Van Frank v. Ehret Warren Mfg. Co., 89 Mo. App. 573, amplified in the case of Van Frank v. Brooks, 93 Mo. App. 412, 67 S. W. 688, in which it is held that, where the claim is one for which a lien is afforded by section 4239, Rev. St. Mo. 1899, relating to liens in favor of contractors, materialmen, etc., against railroad companies, the statutory remedy excludes the equitable one allowing a preference in a foreclosure suit. This ruling is based upon the proposition that the alleged lienor has a complete and adequate remedy at law by the statute, and that, as the statute giving the right of lien against railroad companies was enacted and in force in this state long prior to the introduction into the federal judiciary procedure in railroad foreclosure suits of the right to an equitable preference over the mortgagee, it is a legal remedy afforded which excludes the invocation of the equity doctrine. That court, while recognizing the flexibility of equitable principles to meet constantly occurring novel situations in connection with the development of railroads and railroad mortgages, held that:

"The creation of an equitable remedy for this purpose is not called for when there is already an adequate statutory one in force. Nor could an equitable one be tolerated in that contingency without disregarding the precept that cases are not cognizable in equity when there is a sufficient legal remedy, except in the few instances of concurrent jurisdiction."

The court also recognized the correctness of the rule that when a court of equity, in the exercise of its inherent powers, has jurisdiction to grant particular relief in the particular case, "such jurisdiction is not, in general, lost, or abridged, or affected because the courts of law may have subsequently acquired a jurisdiction to grant either the same or different relief in the same kind of cases and under the same facts or circumstances." But, inasmuch as the legal remedy under the mechanic's lien statute was provided and existed in this state before any court had introduced the doctrine of equitable preference in foreclosure proceedings, the legal remedy "is the older, and therefore precludes the exercise of the latter." Should this ruling of the Court of Appeals be followed by this court? As said by Mr. Justice White, in M., K. & T. Ry. Co. v. McCann, 174 U. S. 586, 19 Sup. Ct. 758, 43 L. Ed. 1093: "The elementary rule is that this court accepts the interpretation of the statute of a state affixed to it by the court of last resort thereof." Were such the construction placed upon the state

statute by the Supreme Court of the state (the court of highest juris-
diction in the state), there would be better ground for holding that it
should be followed by this court, for the reason that the rule established
by the state court might constitute a rule of property as to railroads
operated in the state.    Knapp, Stout & Company v. McCaffrey, 177
U. S. 638, 20 Sup. Ct. 824, 44 L. Ed. 921; Williams v. Gaylord, 186
U. S. 157, 163, 165, 22 Sup. Ct. 798, 46 L. Ed. 1102.    But it might be
that, notwithstanding such construction of the state statute in ques-
tion, the federal court, in the exercise of its equity jurisdiction, in taking
possession of property under a receivership, could nevertheless condi-
tion the appointment of receivers upon the requirement that they
should recognize and pay certain specified indebtednesses against the
corporation.    But this question is not before the court.    The Court
of Appeals of this state in many respects is not the highest court of
the state, whose rulings are binding on this court.    In M., K. & T. Ry.
Co. v. Elliott, 184 U. S. 530, 22 Sup. Ct. 446, 46 L. Ed. 673, it was
held that the judgment of the state Court of Appeals in a case within
its jurisdiction, not reviewable by the Supreme Court of the state, was
so far a judgment by a court of last resort as to authorize the prosecu-
tion of a writ of error directly from the Court of Appeals to the Su-
preme Court of the United States.    Under the scheme of the constitu-
tional provision creating the Court of Appeals of the state, the Supreme
Court, when a like question comes before it as to the construction and
effect of a statute of the state, may give a different construction
thereto from that of the Court of Appeals; and the ruling of the
Supreme Court would then become the local law as to the effect of the
statute.    The most to be said of the ruling of the Court of Appeals
under consideration is that it is entitled to respect by the federal court
in administering law in the state when its construction of the statute
comes before the federal court for determination.    The ruling of that
court may be strengthened by the decisions of other courts in pari
materia.

In Farmers' Loan & Trust Company v. Candler (Ga.) 18 S. E. 540,
Candler, the claimant, as here, intervened in the foreclosure suit, as-
serting an equitable preference over the mortgagee.    Likewise had he
previously undertaken to file a mechanic's lien, which contained a mis-
description of the property, invalidating his lien.    The court held
that, having the right to the lien, or an opportunity to file one, he was
not entitled to the equitable lien as against the mortgagee.    The court
said:

"The scheme of the Code is to give to contractors for building railroads
a lien for work done or materials furnished on certain prescribed terms,
and the mode of enforcing the lien is also prescribed.    It seems to us plain
that the object of the Code would be frustrated, and virtually defeated, if
a contractor who has secured a lien, but failed to enforce it in the manner
prescribed, can abandon that lien, and fall back upon an alleged equitable
lien involved in the very same state of facts out of which his legal lien arose,
and thereby postpone or defeat a mortgage upon the railroad, duly recorded
and foreclosed; this mortgage being of older date than the general judg-
ment which the contractor has obtained for the amount of his debt.    We
entertain no doubt that the law contemplates that a contractor to whom it
gives a legal lien upon a railroad, and who has nothing to do in order to
take the benefit of it but to enforce it in the way prescribed, shall have no

other lien, either in addition to it or as a substitute for it. He cannot cover his failure to comply with the statute as to the enforcement of the lien by abandoning that lien and asserting another one, nor can he assert his legal lien otherwise than in the mode prescribed. We need not rule, and do not, whether, if there were no statutory system of liens in behalf of railroad contractors, there would be any equity in favor of the contractor against the mortgage, under the circumstances of this case, or not. But with that system, and the relation to it which this contractor occupies, we deem it perfectly clear that he is restricted to his statutory lien, and must enforce that or none at all."

Independent of the question as to whether or not the statutory prescription for securing liens upon railroad property in the state excludes the establishment of the common-law lien as against the mortgagee whose lien in the case at bar covers all the property of the railroad company, as well as its income in excess of operating expenses, the question arises: Where it appears, both on the face of the bill of intervention and in the intervener's proofs, that after the appointment of the receivers under the foreclosure suit by the mortgagee the intervener filed a mechanic's lien, under the state statute, on the property of the railroad company in this state, on the account in question, can the intervener nevertheless assert an equitable or common-law lien? The only adjudicated case bearing on this question, so far as I am advised, is that of Bankers' & Merchants' Tel. Co. of Indiana v. Bankers' & Merchants' Tel. Co. of New York (C. C.) 27 Fed. 536, where the intervener undertook to file a mechanic's lien under the statute, and also to assert a common-law lien. The master concluded his report as follows: "I report and find that by perfecting his claim for a lien under the statute Mr. Vale waived the right, if he had any, to assert his common-law lien." The Circuit Court, while holding that the claimant did not come within the purview of the statute, said: "In the opinion of the court the petitioner had no lien at common law or in equity." On appeal to the Supreme Court (entitled Vane v. Newcombe, 132 U. S. 220, 238, 10 Sup. Ct. 60, 65, 33 L. Ed. 310), after considering the statute under which the mechanic's lien was asserted, the court said: "A common-law lien and an equitable lien are also claimed. As to the common-law lien the master reported 'that, by perfecting his claim for a lien under the statute, Mr. Vane waived the right he had, if any, to assert his common-law lien.' We concur in this view as to the personal property and earnings of the corporation." It is quite clear from the finding of the master that he based his conclusion on the legal proposition that the filing of the statutory lien was a waiver of the right to invoke a common-law lien. This view of the master was affirmed by the Supreme Court, and it seems to me the conclusion stands to reason. When in possession of all the information respecting the circumstances under which the materials in question were furnished, whether on a general credit looking to the responsibility of the railroad company, with the right under the statute to file a mechanic's lien, or whether it was under a special understanding entitling the vendor to an equitable preferential lien, the vendor, after the court had taken charge of the property for administration under the receivership, filed its statement for a statutory lien on the account, asserting that the materials were sold "pursuant" to a specific written

contract of date January 1, 1896, and that all the items therein were furnished under "one entire contract." This was a proclamation in solemn form by the claimant to the receivers and every creditor of the insolvent company that it abandoned any other assertion of a lien, especially an equitable one, dependent upon a different state of facts. If I read aright the plain language of the Supreme Court in the foregoing case, this act constituted a waiver of any common-law lien. I can see nothing to differentiate that case on principle from the one at bar.

It results that the claim of the intervener to an equitable preference is disallowed.